Thomas H. Wickes, Jr., Appellant, v. Hugh P. Walden et al., Executors, Appellees.

Gen. No. 14,538.

1. EVIDENCE—*when impeachment improper.* A party cannot impeach a witness whom he has called.

2. WITNESSES—*when incompetent by virtue of marital relation.* The testimony of divorced wives of a party as to matters occurring during the marital relation, is incompetent.

3. APPEALS AND ERRORS—*presumptions in favor of decree.* It will be assumed that the chancellor's decision was founded on evidence lawfully admissible and the Appellate Court in weighing such evidence will take into consideration, in arriving at its judgment, only such evidence as it regards as admissible.

4. AMENDMENTS AND JEOFAILS—*when denial of leave after announcement of decision not error.* The right to permit amendments at any time rests within the sound discretion of the court; it is only when it is made clearly to appear that such discretion has been abused that the court of review will interpose its judgment contrary to that of the trial judge.

Bill in equity. Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed June 28, 1909.

Statement by the Court. This is an appeal from a decree of the Superior Court dismissing appellant's bill for want of equity after a hearing upon the merits. The bill was filed in the lifetime of appellees' testator, the father of appellant, September 25, 1903. The son was complainant and the father defendant, and so the cause remained as to parties until the death of the father, whose executors, the appellees, were subsequently substituted as defendants. The bill charged substantially that on or before May 1, 1897, appellant was the owner and possessed of twenty shares of the capital stock of the Pacific Steam Laundry Company of St. Louis, a Missouri corporation, and that they were of the par value of $100 each, and together constituted one-fifth of the entire capital stock of the company; that about May 1, 1897, appellant requested his father to make him a loan of $1,200, which he agreed

to do on the assignment of the twenty shares of stock as security for its repayment, and of a further sum of $1,800, the amount of a loan previously made to appellant by his father. This arrangement was consummated, and until payment of the two loans it was agreed that the father should collect and receive all dividends and profits on the stock and credit the amounts so received upon the indebtedness until the $3,000 was paid; that upon the happening of the latter event, appellant's father should re-assign and deliver the 20 shares of stock to him; that appellant's father collected dividends upon the stock in excess of the amount of the two loans, with all interest thereon; that while appellant is unable to state how much his father did receive, he applied to him for a statement showing the amounts collected, which was refused; that about May 1, 1903, he demanded of his father a return of the stock, which was likewise refused; charges that his father collected from dividends and profits on the stock several thousand dollars in excess of the amount of the two loans, with interest, and that he, appellant, is entitled to such excess; that the stock is worth much more than its face value, and that appellant is entitled to its return; prays that his father may be decreed to return the stock, and if he shall have sold it, that he then account for its value and for all dividends received, and for general relief.

Appellees' testator answered the bill, neither admitting nor denying that his son owned the stock, but calling for strict proof of that alleged fact. The answer then proceeds categorically to deny every other material averment of the bill; denies that appellant is entitled to an accounting, and prays the same benefit of the answer as if he had pleaded or demurred to the bill.

Appellant filed a replication to his father's answer and the cause was subsequently referred to a master to take the proofs. March 24, 1906, on suggestion of the death of the defendant Wickes, the appellees were

by order duly entered substituted as defendants in the cause.

Considerable testimony was taken before the former master as special commissioner, prior to the death of appellees' testator, the latter being called and examined as a witness by appellant. In his examination as appellant's witness, the transactions covered by the bill were gone into in detail, and the contentions of appellant refuted. The two divorced wives of appellant's father, Mrs. Clarisa Spicer and Mrs. Edna Parker, gave testimony on behalf of appellant as to matters occurring during the existence of the conjugal relationship. Appellees' motion to exclude their testimony was allowed. After the decision of the chancellor, appellant asked leave to file an amended bill, which was denied. A decree was entered dismissing the bill for want of equity, as recommended in the special commissioner's report. The decree recites all the material facts sustained by the proofs, which in its ultimate conclusion is to the effect that while loans had been made to appellant by his father, a final settlement was had between them, and that the stock finally passed to the elder Wickes by *bona fide* purchase from appellant. The burden of appellant's contentions, under his numerous assignments of error, are that the decree is contrary to the probative force of the evidence, and that the chancellor erred in denying appellant's motion to file an amended bill.

W. P. BLACK and MASON & MASON, for appellant.

F. B. JOHNSTONE, for appellees.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Assuming, for the purpose of this decision, that the testimony of appellant was admissible, still he failed to sustain the material averments of his bill by that quantum of proof which the law demands to entitle him to prevail. He sought to set aside the transac-

tions with his father in relation to the stock, on the theory that his father acquired title to the stock for certain loans of money for which the stock was surrendered as collateral security, when, on the contrary, the clear weight of the evidence demonstrates that appellant made, in two separate transactions, a direct sale of the stock to his father. We have examined with care all the evidence found in the record, which we do not deem necessary or expedient to here recite more than briefly and therefrom we are impelled to the conclusion, from its probative force and weight, that appellant's claim is disproved, and the account of the transactions given by the father, as the witness of appellant, sustains the latter's version of such transactions. The material parts of the testimony of the father is corroborated and sustained by written documents which passed between the parties, and they stand as a complete refutation of appellant's claim. In no part of appellant's proof do these mute but incontestable witnesses sustain his contentions.

Appellant saw fit to make his father his own witness, and his testimony he cannot now impeach. By calling him as his witness he vouched for the verity of his father's testimony, and, furthermore, we make free to say that there is nothing in this record justifying us in doubting its verity, or which tends to cast suspicion upon its reliability. The facts demonstrated by the proofs are, that the stock in question, which was not twenty shares of the par value of $100 each, as averred in appellant's bill, but forty shares of the par value of $50 each, was originally acquired by appellant through his father, without the payment of any money. These forty shares were evidenced by two certificates of twenty shares each, which were delivered to appellant in June, 1895, from which time, until their sale to the father, they stood in the name of appellant upon the books of the Pacific Laundry Company. On an accounting in April, 1898, between appellant and his father, the former was found to be

indebted to the latter in the sum of $743.33, for which appellant gave his note and deposited both of the stock certificates with his father as collateral security for its payment. In the succeeding month appellant's father returned to him one of the certificates, and this certificate he, in July, 1898, transferred to John A. Devore as collateral security for a money loan. On July 19, 1898, appellant sold to his father for $1,500 the twenty shares of stock which the father had returned to him, which he paid by three checks, two aggregating $1,255 to appellant's own order, and one to the order of John A. Devore for $245, to take up the loan for which Devore held a certificate for twenty shares as collateral security. The remaining certificate in the hands of appellant's father, appellant sold to his father October 5, 1898, for another $1,500, which was paid by cancelling the note of appellant for $743.33, charging him with $130 advanced him aside from the $743.33, and by giving a check to appellant's order for $626.67, which three items total $1,500. Appellant failed to question these transactions for nearly five years, nor did he allege or testify to any fact in excuse of laches imputable to him by reason of such long continued delay. There is nothing in this record from which duress or fraud on the part of Wickes, Sr., in his dealings with his son, the appellant, can be inferred, nor are we warranted in assuming that the consideration paid for the stock was inadequate, when it is borne in mind that the Laundry Company was dependent upon the patronage of a corporation in which Wickes, Sr., was the controlling factor, for all the work it did, and by which its prosperity was made possible, and which patronage might at any time be withdrawn, either at the will of Wickes, Sr., his death, or his ceasing to be connected with the corporation which was the source of the Laundry Company's successful activities. Neither was appellant uninformed as to the intrinsic value of the stock when he sold it, and the record is silent as to any artifice or deception practiced by appellant's

father, or any one in his behalf, to induce appellant to part with his stock at the price which he sold it to his father. At the time of the sale, appellant was of full age and under no legal disability and no fiduciary relationship existed between appellant and his father at the time appellant sold his father the forty shares of laundry stock. We are in accord with the 20th finding of the decree, viz: "Complainant's evidence is contradicted in every essential particular by the documentary evidence in the case and by the testimony of Wickes, Sr., while the testimony of Wickes, Sr., is corroborated in every essential particular by such documentary evidence and the testimony of Devore and Clements."

The testimony of the divorced wives of Wickes, Sr., found in this record, as to matters occurring during the marital relationship, was, by our statute, section 5, chapter 51, R. S., clearly inadmissible. We think the right to object was in apt time, in view of the stipulation of the parties. It will be assumed, however, that the chancellor's decision was founded on evidence legally admissible, and this court, in weighing such evidence, will take into consideration, in arriving at its judgment, only such evidence as it regards as admissible.

The chancellor did not err in refusing to permit appellant to file an amended bill after announcing its decision on the merits of the cause made by the pleadings and the proofs. No motion was made until after the chancellor had announced his conclusions, and no amended bill was proffered until the day the decree appealed from was entered. The right to permit amendments at any time rests in the sound discretion of the court. It is only when it is made clearly to appear that such discretion has been abused that a court of review will interpose its judgment contrary to that of the trial judge. Sawyer v. Campbell, 130 Ill. 186; Lumber Co. v. Daugherty, 125 Ill. App. 258.

We are of the opinion that the learned chancellor of

the Superior Court exercised the discretion reposed in courts wisely, in refusing to grant the motion of appellant to file the amendment proffered, as it came too late. As said in Hoyt v. Tuxbury, 70 Ill. 331, "The objection that the court refused to allow certain amendments to be made after the hearing and final decision of the case in the court below, cannot be assigned for error. Whether the amendment should be made or not, rested purely in the sound discretion of the court."

The record being without reversible error, the decree of the Superior Court is affirmed.

*Affirmed.*